WO

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Concord Servicing Corporation, | No. CV-15-01280-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Concord Resolution Incorporated, | |
| Defendant. | |

Pending before the Court is Plaintiff Concord Servicing Corporation's motion for default judgment, (Doc. 12), against Defendant Concord Resolution, Inc., pursuant to Fed. R. Civ. P. 55(b). No response has been filed by Defendant. The Court will grant the motion.

## I.

This action commenced on July 9, 2015, with the filing of the Complaint. (Doc. 1). Defendant has failed to answer or file any motion to dismiss in accordance with Federal and Local Rules.[1] Upon application, (Doc. 10), the Clerk of the Court entered default against Defendant on September 4, 2015. (Doc. 11). Plaintiff thereafter filed the pending motion for default judgment on September 21, 2015. (Doc. 12). Since the motion was filed, Defendant has failed to respond in any capacity.

---

[1] Defendant received a demand letter from Plaintiff on May 15, 2015. (Doc. 12-2 at 2-3). Defendant was then served with the Complaint on July 23, 2015. (Doc. 9).

After entry of default, the factual allegations of the Complaint, except those relating to the amount of damages, are taken as true. *Yoo v. Arnold*, 615 Fed. Appx. 868, 870 (9th Cir. 2015); *Fair Housing of Marin. v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002); *Televideo Systems*, *Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987). The Court thus accepts as true the well-pleaded facts contained in the Complaint. (Doc. 1).

## II.

Fed. R. Civ. P. 55(a) establishes that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend as provided by these rules . . . the clerk shall enter the party's default." Once a default has been entered, and a defendant fails to appear to move to set aside the default, then the Court may enter a default judgment pursuant to Fed. R. Civ. P. 55(b)(2). The "general rule" with respect to default judgments is that they "are ordinarily disfavored," as "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986) (citing *Pena v. Sequros La Comercial*, *S.A.*, 770 F.2d 811, 814 (9th Cir. 1985)). Nonetheless, "[g]ranting default judgment is within the court's discretion." *EEOC v. Recession Proof United States LLC*, No. 11-CV-01355-PHX-BSB, 2013 U.S. Dist. LEXIS 171524, at *8 (D. Ariz. Aug. 19, 2013).

Plaintiff moves the Court to exercise its discretion and enter default judgment against Defendant and issue injunctive relief for (1) trademark infringement and (2) cybersquatting. (Doc. 12 at 1). In determining whether default judgment is appropriate, the Court is guided by consideration of the following factors: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Eitel*, 782 F.2d at 1471-72 (citation omitted). The Court will address each of the applicable factors in turn.

**A.      Possible Prejudice to Plaintiff**

The first *Eitel* factor weighs in favor of granting Plaintiff's motion, as Plaintiff will be prejudiced if default judgment is not entered in its favor. At no point has Defendant responded to this action, and the record reflects that Plaintiff gave proper notice. (Docs. 2, 5, 9). If the motion is not granted, Plaintiff "will likely be without other recourse for recovery." *PepsiCo*, *Inc. v. Cal. Sec. Cans.*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002); *see also United States v. $86,496.00 in United States Currency*, No. CV-07-1693-PHX-DGC, 2008 U.S. Dist. LEXIS 115052, at *4-5 (D. Ariz. July 1, 2008) (citation omitted).

**B.      Merits of Plaintiff's Claims**

Where, as here, default has been entered, the factual allegations of the Complaint are taken as true. However, for this factor to weigh in favor of granting a motion for default judgment, a plaintiff must plead sufficient facts to "state a claim on which it may recover, which often requires establishing a prima facie case." *Getty Images (US)*, *Inc. v. Virtual Clinics*, No. C13-0626JLR, 2014 U.S. Dist. LEXIS 12449, at *8-9 (W.D. Wash. Jan. 31, 2014) (citing *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978)); *see also Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992). Thus, the Court must analyze Plaintiff's claims of trademark infringement and cybersquatting.

**1.      Trademark Infringement**

To state a prima facie claim for trademark infringement under Title 15 U.S.C. § 1125 of the Lanham Act, Plaintiff must establish: (a) it has a valid, protectable trademark; and (b) Defendant's use of the mark is likely to cause confusion. *See Rearden LLC v. Rearden Commerce*, *Inc.*, 683 F.3d 1190, 1202-03 (9th Cir. 2012); *Applied Info. Scis. Corp. v. eBay*, *Inc.*, 511 F.3d 966, 969 (9th Cir. 2007) (citing *Brookfield Communs.*, *Inc. v. W. Coast Entm't Corp.*, 174 F.3d 1036, 1047, 1053 (9th Cir. 1999); *Reno Air Racing*

*Ass'n v. McCord*, 452 F.3d 1126, 1134 (9th Cir. 2006) (citing *KP Perm. Make-Up, Inc. v. Lasting Impression*, *Inc.*, 408 F.3d 596, 602 (9th Cir. 2005)).

Plaintiff obtained a federal trademark registration for CONCORD in 1993, and again in 2005. (Doc. 1 at 2). Plaintiff has made continuous and exclusive use of the CONCORD mark for "many years" in providing "financial services, including delinquent collections of installment contracts and other consumer obligations." (*Id.* (internal quotation marks omitted)). Plaintiff enjoys a positive reputation throughout the United States, clients "identify the CONCORD mark with Plaintiff," and Plaintiff "receives clients and referrals from throughout the United States and internationally" based on its positive reputation. (*Id.*). On October 31, 2014, Defendant was formed and began using the business name CONCORD for debt collection services on behalf of pay day lenders. (Doc. 1 at 1). Defendant also registered the domain name www.concordresolution.com to advertise its service. (*Id.* at 2). Defendant never sought nor received authorization from Plaintiff to use CONCORD, and Defendant had constructive notice of Plaintiff's prior use of CONCORD as a trademark for its services. (*Id.* at 3).

Plaintiff has clearly established that is has a valid, protectable trademark. It must also show that a "likelihood of confusion" exists, which is the "central element of trademark infringement," and can be established by demonstrating that the "similarity of the marks is likely to confuse customers about the source of the products." *GoTo.com, Inc. v. Walt Disney Co.*, 202 F.3d 1199, 1205 (9th Cir. 2000) (citation omitted). In determining the likelihood of confusion, the Court is guided by consideration of the eight "so-called *Sleekcraft* factors . . . (1) the similarity of the marks; (2) the relatedness of the two companies' services; (3) the marketing channel used; (4) the strength of [Plaintiff's] mark; (5) [Defendant's] intent in selecting its mark; (6) evidence of actual confusion; (7) the likelihood of expansion into other markets; and (8) the degree of care likely to be exercised by purchasers."[2] *Id.* (citation omitted).

---

[2] In the context of services advertised over the internet, "the three most important *Sleekcraft* factors are (1) the similarity of the marks, (2) the relatedness of the goods or services, and (3) the "simultaneous use of the [internet] as a marketing channel."

Accepting the well-pleaded facts of the Complaint as true, the Court finds that under the *Sleekcraft* factors, Plaintiff has established that there is a likelihood of confusion. *GoTo.com*, *Inc.*, 202 F.3d at 1205. Both companies are utilizing CONCORD, making them identical marks, and Defendant is using a similar internet domain name and website to advertise similar, if not identical services as Plaintiff. Plaintiff has a positive reputation throughout the United States, and receives referral business both nationally and internationally, indicating that Plaintiff has a strong mark that has been appropriated. (Doc. 1 at 2-4). Plaintiff has submitted evidence of actual confusion between the two marks, and the Complaint makes clear that Defendant's intent was to to capitalize on the established brand of Plaintiff for the purpose of offering a similar service to consumers. Moreover, the fact that Defendant is operating a competing website and domain name mitigates the weight of the seventh factor, "the likelihood of expansion into other markets." *GoTo.com*, *Inc.*, 202 F.3d at 1205. Finally, both companies offer debt collection services, an industry that in many cases carries a stigma among the general public. Plaintiff "enjoys a positive reputation" throughout the country and receives "clients and referrals" based on its reputation. (Doc. 1 at 2). In selecting a debt collection company, the consumer is likely to exercise reasonable discretion, and Plaintiff's reputation is essential to a viable candidacy as a potential service provider.

In sum, the *Sleekcraft* factors point to there being a high "likelihood of confusion" over Defendant's use of the trademarked CONCORD, and Plaintiff has therefore made out a prima facie claim of trademark infringement.

### 2.    Cybersquatting

The Ninth Circuit has described the act of cybersquatting as "the Internet version of a land grab. Cybersquatters register well-known brand names as Internet domain

---

*GoTo.com*, *Inc*., 202 F.3d at 1205 (quoting *Brookfield Communs.*, *Inc.*, 174 F.3d at 1055 n.16). Here, as discussed *infra*, the marks are identical, the service offered is very similar, and both companies utilize the internet as a marketing channel. Thus, under the "most important" factors, there is clearly a likelihood of confusion.

names in order to force the rightful owners of the marks to pay for the right to engage in electronic commerce under their own name." *Interstellar Starship Services*, *Ltd. v. Tchou*, 304 F.3d 936, 946 (9th Cir. 2002). The Anticybersuqatting Consumer Protection Act ("ACPA"), Title 15 U.S.C. § 1125 (d), was enacted to combat this practice. The ACPA established that "[a] person shall be liable in a civil action by the owner of a mark . . . if, without regard to the goods or services of the parties, that person (i) has a bad faith intent to profit from that mark . . . ; and (ii) registers, traffics in, or uses a domain name [that is confusingly similar to another's mark or dilutes another's famous mark]." 15 U.S.C. § 1125 (d)(1)(A).

The Complaint alleges that Defendant registered the domain name www.concordresolution.com in bad faith, and with the intent to profit from goodwill associated with Plaintiff's trademark "for debt collection services." (Doc. 1 at 7). Plaintiff has utilized the domain name www.concordservicing.com continuously since 1996. (Doc. 1 at 3). Defendant's domain name "suggests sponsorship by or affiliation with Plaintiff," as the two companies offer similar services and have similar web addresses. (*Id.*). Moreover, Defendant uses the above-mentioned domain name for advertising its own service, and has done so to create "initial interest confusion," trade on Plaintiff's goodwill, and "unfairly compete" with a domain name "identical or confusingly similar to CONCORD," all while infringing on Plaintiff's trademark. (*Id.*).

Accepting the Complaint's facts as true, the Court finds that Plaintiff has made out a prima facie case that Defendant's use of its domain name was confusingly similar to Plaintiff's at the time of registration, and that Defendant did so with the bad faith intent to profit from that mark in operating a debt collection service, in violation of 15 U.S.C. § 1125 (d)(1)(A). *See Aviva United States Corp. v. Vazirani*, 902 F. Supp. 2d 1246, 1266 (D. Ariz. 2012) (analyzing whether bad faith was present under the nine factors articulated under 15 U.S.C. § 1125 (d)(1)(B)(1)). Plaintiff has therefore pleaded a meritorious claim of cybersquatting.

Having reviewed the Complaint, Plaintiff has made out a prima facie claim for

1   trademark infringement and cybersquatting, the claims that Plaintiff seeks default

2   judgment on. The second *Eitel* factor therefore favors granting the motion.

3

4   **C.    The Sufficiency of the Complaint**

5           The Ninth Circuit has suggested that the third *Eitel* factor requires that Plaintiff's

6   Complaint "state a claim on which the [plaintiff] may recover." *Danning*, 572 F.2d at

7   1388. Based on the Court's analysis of the merits of Plaintiff's trademark infringement

8   and cybersquatting claims, nothing suggests that the Complaint fails to "state a claim on

9   which the [plaintiff] may recover," or that it fails to state a facially plausible claim for

10  relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The third *Eitel* factor favors granting

11  the motion.

12

13  **D.    Amount at Stake**

14          In considering the fourth *Eitel* factor, the Court must examine "the sum of money

15  at stake in relation to the seriousness of Defendant's conduct." *PepsiCo*, *Inc.*, 238 F.

16  Supp. 2d at 1176-77. "If the sum of money at stake is completely disproportionate or

17  inappropriate, default judgment is disfavored." *Gemmel v. Systemhouse*, *Inc.*, No. CIV

18  04-198-TUC-CKJ, 2008 U.S. Dist. LEXIS 81469, at *12 (D. Ariz. Jan. 3, 2008). In other

19  words, the Court must ensure that the amount of damages is reasonable and demonstrated

20  by the plaintiff's evidence. *See* Fed. R. Civ. P. 55(b); *LG Elecs.*, *Inc. v. Advance Creative*

21  *Computer Corp.*, 212 F. Supp. 2d 1171, 1178 (N.D. Cal. 2002) ("[T]he evident policy of

22  [Rule 55(b)] is that even a defaulting party is entitled to have its opponent produce some

23  evidence to support an award of damages."). And "[a] default judgment must not differ in

24  kind from, or exceed in amount, what is demanded in the pleadings." Fed. R. Civ. P.

25  54(c).

26          Here, Plaintiff seeks permanent injunctive relief. (Doc. 12 at 5-8). Title 15 U.S.C.

27  § 1116 (a) authorizes the use of injunctive relief for trademark infringement. *See*

28  *Craigslist*, *Inc. v. Naturemarket*, *Inc.*, 694 F. Supp. 2d 1039, 1061-62 (N.D. Cal. 2010).

1    Indeed, "[i]njunctive relief is the remedy of choice for trademark [cases because] there is

2    no adequate remedy at law for the injury caused by defendant's continuing

3    infringement." *Century 21 Real Estate Corp. v. Sandlin*, 846 F.2d 1175, 1181 (9th Cir.

4    1988). Permanent injunctive relief is warranted where it is not "absolutely clear" that the

5    defendant has ceased its infringing behavior. *PepsiCo*, *Inc.*, 238 F. Supp. 2d at 1178

6    (quoting *Friends of the Earth*, *Inc. v. Laidlaw Env. Services (TOC)*, *Inc.*, 528 U.S. 167,

7    189 (2000)). And such relief is "routinely granted in cases where a defendant has not

8    appeared in the action at all," as "the defendant's failure to appear to answer . . . suggests

9    that the plaintiff would continue to be exposed to the risk of continuing harm by the

10   defendant's misuse of the plaintiff's mark." *Avnet*, *Inc. v. Avana Techs. Inc.*, 2014 U.S.

11   Dist LEXIS 177436, at *25-26 (D. Nev. Dec. 3, 2014) (citing *Jackson v. Sutrkie*, 255 F.

12   Supp. 2d 1096, 1103, (N.D. Cal. 2003)); *see also PepsiCo*, *Inc.*, 238 F. Supp. 2d at 1178;

13   *Ariz. Opera Co. v. AZ Opera Co.*, No. CV 06-998-PHX-JAT, 2007 U.S. Dist. LEXIS

14   48039, at *9 (D. Ariz. June 29, 2007); *Twentieth Century Fox Film Corp. v. Streeter*, 438

15   F. Supp. 2d 1065, 1072-73 (D. Ariz. 2006); *Philip Morris U.S.A. Inc. v. Castworld*

16   *Prods.*, 219 F.R.D. 494, 502 (C.D. Cal. Dec. 30, 2003). But Plaintiff must actually

17   establish that irreparable harm has occurred. *See MGM Studios*, *Inc.*, *v. Grokster*, *Ltd.*,

18   518 F. Supp. 2d 1197, 1210-11 (C.D. Cal. 2007) (finding that post-*eBay* a court may no

19   longer presume irreparable harm in the permanent injunction context).

20        For Plaintiff to be entitled to permanent injunctive relief, it must first satisfy a

21   four-element test. Plaintiff must demonstrate: "(1) that it has suffered an irreparable

22   injury; (2) that remedies available at law, such as monetary damages, are inadequate to

23   compensate for that injury; (3) that, considering the balance of hardships between the

24   plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest

25   would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange*, *L.L.C*.,

26   547 U.S. 388, 391 (2006); *Herb Reed Enters.*, *LLC v. Fla. Entm't Mgmt*., 736 F.3d 1239

27   (9th Cir. 2013) (citations omitted).

28        Plaintiff has alleged that Defendant has infringed on the CONCORD mark by

willfully using it to advertise its debt collecting services. (Doc. 1 at 4). Defendant's use has "creat[ed] confusion among the consuming public, diminish[ed] the distinctiveness of Plaintiff's trademark and misappropriate[d] the associated goodwill." (*Id.*). Plaintiff has supported these pleaded facts—taken as true—with documentary evidence. (Doc. 12-2 at 4-9). The Court has already found that the Complaint makes out a prima facie claim of trademark infringement and cybersquatting. Coupled with the preceding well-pleaded facts and documentary evidence, the Court finds that Plaintiff has sufficiently established that it suffered irreparable injury.

The Court also finds that Plaintiff has no other adequate remedy at law. Since Plaintiff sent its demand letter on May 15, 2015, Defendant has not responded. On September 4, 2015, the Clerk entered default, and in the intervening nine months, Defendant has not responded. There is no evidence that it is "absolutely clear" that Defendant has ceased infringing on Plaintiff's trademark, and no evidence that absent an injunction, Defendant will stop. It follows that injunctive relief is necessary to prevent current and future infringement by Defendant. The balance of hardships also tips in Plaintiff's favor. Cost of compliance for Defendant is minimal, and Plaintiff faces potential losses of reputation, customers, revenue, and distinctiveness if Defendant continues to infringe. Finally, the public has a general interest in not being deceived or confused by Defendant's use of Plaintiff's CONCORD mark and domain name.

Plaintiff has satisfied the four necessary elements to establish that permanent injunctive relief is warranted. It follows that the Court will enjoin Defendant from infringing/replicating the CONCORD mark and utilizing the domain name www.concordresolutions.com. Plaintiff's requested recovery is thus neither "completely disproportionate [n]or inappropriate" and this *Eitel* factor favors granting Plaintiff's motion.

**E.     Possible Dispute Concerning Material Facts**

Defendant has not responded to this action at any point. Plaintiff sent Defendant a

Demand Letter on May 15, 2015, which went unanswered. (Doc. 12-2 at 2-3). The Complaint was filed on July 9, 2015, (Doc. 1), and the record reflects that Defendant was served on July 23, 2015. (Doc. 9). On September 3, 2015, Plaintiff applied for an entry of default, (Doc. 10), which was entered by the Clerk of the Court on September 4, 2015. (Doc. 11). Plaintiff thereafter filed the pending motion for default judgment on September 21, 2015. (Doc. 12). In the intervening nine months, no answer was filed, no relief was sought from the Clerk's entry of default, and no opposition has been filed to Plaintiff's motion. Upon entry of default, the factual allegations of a Complaint, except those relating to the amount of damages, are taken as true. *Yoo*, 615 Fed. Appx. at 870. Thus, there is no dispute concerning material facts, and this factor weighs in favor of granting default judgment. *Getty Images (US)*, 2014 U.S. Dist. LEXIS 12449, at *11-12 (citation omitted) (noting that "[w]hen default has been entered, courts find that there is no longer the possibility of a dispute concerning material facts because the court must take the plaintiff's factual allegations as true"); *Landstar Ranger*, *Inc. v. Parth Enters.*, *Inc.*, 725 F. Supp. 2d 916, 921 (N.D. Cal. 2010) (noting that where a plaintiff "has supported its claims with ample evidence, and defendant has made no attempt to challenge the accuracy of the allegations in the complaint, no factual disputes exist that preclude the entry of default judgment").

**F.     Whether Default Was Due to Excusable Neglect**

As discussed *supra*, Defendant has had numerous opportunities to respond in some capacity over the past thirteen months, and has failed to do so. (Doc. 9). Defendant has offered no explanation for its failure to meet any of the deadlines associated with this action. Nearly nine months has elapsed between the Clerk's entry of judgment, and this Court's consideration of Plaintiff's motion for default judgment. It is therefore highly unlikely that Defendant's "failure to answer and the resulting default was a result of excusable neglect." *Gemmel*, 2008 U.S. Dist. LEXIS 81469, at *13; *Shanghai Automation Instrument Co. v. Kuei*, 194 F. Supp. 2d 995, 1005 (N.D. Cal. 2001) (finding

that no excusable neglect occurred where the defendants "were properly served with the Complaint, the notice of entry of default, as well as the papers in support of the instant motion").

### G.    Policy Underlying the Federal Rules of Civil Procedure

The final factor—the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits—at least initially appears to weigh against default judgment. "Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. But the mere presence of Fed. R. Civ. P. 55(b) indicates that "this preference, standing alone, is not dispositive." *PepsiCo*, *Inc.*, 238 F. Supp. 2d at 1177. Rule 55 permits termination of a case before the Court hears the merits whenever a defendant fails to defend against an action. Moreover, the failure of Defendant to contest the Complaint or seek relief from the Clerk's entry of default "makes a decision on the merits impractical, if not impossible." *PepsiCo*, *Inc.*, 238 F. Supp. 2d at 1177. Accordingly, the final *Eitel* factor is not sufficient to preclude the Court from entering default judgment.

Having reviewed Plaintiff's motion and analyzed the applicable factors set forth in *Eitel*, the Court finds that factors one through six weigh in favor of granting Plaintiff's motion. The final *Eitel* factor—deciding cases on their merits where reasonably possible—is not sufficient to outweigh the aforementioned six factors. Therefore, for the reasons set forth herein, the Court finds that Plaintiff is entitled to default judgment.

### III.

Plaintiff also seeks an award of costs in the amount of $629.00. (Doc. 8 at 9). 15 U.S.C. § 1117(a) authorizes the award of costs in trademark and cybersquatting cases. On September 21, 2015, Plaintiff submitted a Statement of Costs, itemizing $629.00 in total costs for commencing this action, and swearing to its veracity. (Doc. 13). Courts in the Ninth Circuit have previously awarded costs upon entering default judgment against a

defendant. *Angel v. Capital Research Group*, *Inc.*, 2012 U.S. Dist. LEXIS 89856, at *15 (D. Haw. June 28, 2012); *Dexter v. Homecomings Fin.*, *L.L.C.*, 2011 U.S. Dist. LEXIS 154609, at *13 (D. Or. May 4, 2011); *Elston v. Toma*, 2005 U.S. Dist. LEXIS 42370, at *21 n.8 (D. Or. March 24, 2005); *Sony Music Entm't Inc. v. Elias*, 2004 U.S. Dist. LEXIS 30385, at *15 (C.D. Cal. Jan. 21, 2004); *Discovery Comm.*, *Inc. v. Animal Planet Inc.*, 172 F. Supp. 2d 1282, 1292 (C.D. Cal. 2001); *see also* Fed. R. Civ. P. 54(d)(1).

The Court sees no reason to depart from this line of cases. Plaintiff is entitled to an award of $629.00 for costs associated with bringing this action.

**IV.**

Accordingly,

/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/
/

**IT IS ORDERED** that Plaintiff's Motion for Entry of Default Judgment, (Doc. 12), is **GRANTED**, and the Clerk of the Court shall enter judgment in Plaintiff's favor.

**IT IS FURTHER ORDERED** that Defendant shall pay Plaintiff's costs in the amount of $629.00

**IT IS FURTHER ORDERED** that Defendant shall cooperate in transferring registration of the domain name www.concordresolutions.com to Plaintiff for cancellation.

**IT IS FURTHER ORDERED** that Defendant and those in active concert or participation with it are permanently enjoined from using CONCORD or any confusingly similar word as a trademark for debt resolution services.

**IT IS FURTHER ORDERED** that the Court shall retain jurisdiction to enforce the injunction.

Dated this 6th day of July, 2016.

James A. Teilborg
Senior United States District Judge